UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ROBERT HARVEY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) Case No. 4:23-cv-01292-SRC |
| LELAND DUDEK, Acting Commissioner of the Social Security Administration,[1] | ) ) ) ) |
| Defendant. | ) ) |

**Memorandum and Order**

Robert Harvey seeks judicial review, under 42 U.S.C. § 405(g), of the Commissioner of Social Security's final decision denying his application for disability and disability insurance benefits under Title II of the Social Security Act. The Court affirms the Commissioner's decision.

**I.   Procedural history**

In March 2022, Harvey protectively filed an application for disability insurance benefits. Tr. 179–80. The Social Security Administration denied his application on initial review, Tr. 105–14, and on reconsideration, Tr. 115–25. Upon Harvey's request, Tr. 128–30, an Administrative Law Judge held a hearing, Tr. 44–73, 148–61. Harvey testified during the hearing. Tr. 50–66. Following the hearing, the ALJ denied Harvey's application. Tr. 14–29. Harvey then sought review of the ALJ's decision by the Appeals Council, but the Appeals Council denied Harvey's request. Tr. 1–4. The ALJ's decision, therefore, is the final decision of the Commissioner that this Court reviews. *See* 20 C.F.R. § 404.900(a)(5).

---

[1] Leland Dudek became the Acting Commissioner of the Social Security Administration on February 17, 2025. Pursuant to Federal Rule of Civil Procedure 25(d), the Court "automatically substitute[s]" Leland Dudek for Martin O'Malley as the defendant in this suit. Neither party need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## II.     Standard for determining disability under the Act

Under the Act, an adult individual is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner follows a five-step evaluation when considering whether the claimant has a disability. 20 C.F.R. § 404.1520(a)(1). First, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in substantial gainful activity, the claimant is not disabled. *Id.*

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner evaluates the evidence to determine whether the claimant has a severe "impairment" that "significantly limits [the] [claimant's] physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (second alteration in original) (quoting 20 C.F.R. § 416.920(c)); *see also* 20 C.F.R. § 404.1520(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (first citing *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987); then citing *id.* at 158 (O'Connor, J., concurring); and then citing 20 C.F.R. § 404.1521(a)); *see also* 20 C.F.R. §§ 404.1520(c), 404.1520a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment meets or equals one of the

2

presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. § 404.1520(d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the residual functional capacity (RFC) to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i). RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (quoting *Leckenby v. Astrue*, 487 F.3d 626, 631 n.5 (8th Cir. 2007)); *see also* 20 C.F.R. § 404.1545(a)(1). While a claimant's RFC must be "based on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016) (quoting *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009)), RFC is nonetheless an administrative assessment—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC," *id.* Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (first citing *Myers v. Colvin*, 721 F.3d 521, 526–27 (8th Cir. 2013); and then citing *Perks v. Astrue*, 687 F.3d 1086, 1092–93 (8th Cir. 2012)).

Ultimately, the claimant is responsible for *providing* evidence relating to his or her RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination[] if necessary, and making every reasonable effort to help [the claimant] get medical reports from [his or her] own medical sources." 20 C.F.R. § 404.1545(a)(3). If the Commissioner determines that the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv).

3

Finally, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of producing evidence showing that the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner.  *See Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005); 20 C.F.R. § 404.1520(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled.  20 C.F.R. § 404.1520(a)(4)(v).  If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled.  *Id.*  At this stage, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant.  *Hensley*, 829 F.3d at 932 (citing *Goff*, 421 F.3d at 785).

### III.  The ALJ's decision

Applying the foregoing, the ALJ concluded that Harvey had "not been under a disability within the meaning of the Social Security Act from January 23, 2019, through" June 13, 2023.  Tr. 18, 29.  After determining that Harvey had "not engaged in substantial gainful activity since January 23, 2019," the ALJ considered whether Harvey had any severe impairments.  Tr. 20.  The ALJ concluded that Harvey had several severe impairments, including degenerative-disc disease of the cervical and lumbar spine, carpal-tunnel syndrome, neuropathy, status-post multiple foot surgeries with foot drop, post-traumatic stress disorder, and major-depressive disorder.  *Id.*  The ALJ then considered whether Harvey's impairments individually, or in combination, met, or medically equaled, any of the listed impairments in sections 404.1520(d), 404.1525, or 404.1526.  Tr. 20–21.  The ALJ concluded that they did not.  Tr. 20.

Next, the ALJ determined Harvey's RFC by considering all evidence in the record.  Tr. 22.  The ALJ concluded that Harvey had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except he should never be required to climb ladders ropes or

4

>  scaffolds.  He should never be required to balance as this term is defined in the Selected Characteristics of Occupations (SCO).  He should never be required to crawl.  He can occasionally climb ramps and stairs while using a handrail.  He can occasionally stoop, kneel and crouch.  He can frequently reach and handle with his bilateral upper extremities.  [Harvey] should avoid concentrated exposure to humidity, excessive vibration and pulmonary irritants.  He should avoid all exposure to unprotected heights and working in proximity to moving mechanical parts.  He can perform simple, routine tasks.  He can maintain concentration, persistence and pace in an environment involving simple, routine tasks.  He can tolerate routine changes in job setting and duties. [Harvey] is further limited to working with things rather than people.  He should have only occasional contact with co-workers and he should not be required to perform any tandem tasks.

*Id.*

The ALJ then determined that Harvey "[wa]s unable to perform" any of "his past relevant work."  Tr. 28.  Finally, the ALJ concluded that, considering Harvey's "[RFC], age, education[,] and work experience," there "[wer]e jobs that exist[ed] in significant numbers in the national economy that he c[ould] perform."  *Id.*  Specifically, the ALJ explained that a vocational expert testified that Harvey "would be able to perform the requirements of . . . occupations such as" janitor, dining attendant, or retail clerk.  Tr. 29.  Accordingly, the ALJ rendered his decision:  Harvey was "not disabled."  *Id.*

**IV.     Standard of review**

When a claimant seeks judicial review of the Commissioner's decision, the Court determines whether substantial evidence on the record as a whole supports his decision.  42 U.S.C. §§ 1383(c)(3), 1405(g).  If it does, the Court must affirm the decision.  *Id.*  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197,

5

229 (1938)). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* Under this test, the Court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016) (citing *Crawford v. Colvin*, 809 F.3d 404, 408 (8th Cir. 2015)).

The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id.* (quoting *Johnson v. Colvin*, 788 F.3d 870, 872 (8th Cir. 2015)). The Court will not "reverse merely 'because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the Court] would have decided the case differently.'" *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 369 (8th Cir. 2016) (quoting *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015)).

## V.  Discussion

Harvey requests that the Court remand this case for three primary reasons. First, he argues that the ALJ's decision, particularly the "findings of [RFC]," "fail[ed] to be supported by substantial medical evidence." Doc. 10 at 5.[2] Second, Harvey asserts that the ALJ "failed to properly consider [his] subjective complaints." *Id.* And third, "[a]s a result of these errors," Harvey contends that the ALJ "proffered a flawed hypothetical question to [the] vocational witness," whose "response to [the] flawed hypothetical question d[id] not represent substantial evidence." *Id.* Thus, Harvey seeks remand "for proper consideration of all of [his] subjective complaints" and "the June 2022 Function Report," the "articulation of a proper [RFC] based on an analysis of the substantial medical evidence," and "a properly phrased hypothetical question that is based upon the concrete

---

[2] The Court cites to page numbers as assigned by CM/ECF.

consequences of [his] impairments." *Id.* Throughout his brief, Harvey also advances a handful of ancillary arguments in support of his three main arguments. *See generally* doc. 10.

In response, the Commissioner argues that Harvey "essentially asks the Court to reweigh the evidence." Doc. 17 at 2. But because "the ALJ discussed the medical and nonmedical evidence and formulated an RFC appropriately based upon the record taken as a whole," *id.* at 6 (citing Tr. 22–27), the Commissioner contends that "[s]ubstantial evidence supports the ALJ's decision," *id.* at 2. Likewise, "[u]pon proper consideration of the evidence, the ALJ found that [Harvey]'s statements concerning the intensity, persistence, and limiting effects of his symptoms were inconsistent with the record." *Id.* at 8–9. The Commissioner further responds that "the vocational expert's testimony constitutes substantial evidence," *id.* at 2, because "the hypothetical question" posed to the vocational expert "included those limitations [that] the ALJ found consistent with the evidence, and excluded those that were not supported by the record," *id.* at 12 (citing Tr. 67–68). Therefore, "regardless of how [Harvey] would have weighed the evidence differently," the Commissioner requests that the Court affirm the ALJ's decision. *Id.* at 2. For the following reasons, the Court agrees with the Commissioner and declines Harvey's invitation to reweigh the evidence presented to the ALJ.

A. **The RFC and supporting evidence**

The Eighth Circuit recently explained that, although "a claimant's RFC is a medical question, . . . there is no requirement that an RFC finding be supported by a specific medical opinion." *Schmitt v. Kijakazi*, 27 F.4th 1353, 1360 (8th Cir. 2022) (quoting *Hensley*, 829 F.3d at 932); *see also* 20 C.F.R. § 404.1520c(a). And so "[e]ven though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Schmitt*, 27 F.4th at 1360 (quoting *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007)).

7

In determining Harvey's RFC, the ALJ examined "the entire record," Tr. 22, including numerous sources of "objective medical evidence," Tr. 23.  This evidence included, but was not limited to, "[i]maging performed on February 16, 2022," *id.*, a "magnetic resonance imaging (MRI) scan performed on March 4, 2022," *id.*, "imaging performed on May 23, 2022," *id.*, various "notes" and "[t]reatment notes dated November 2021," *id.*, "ER records dated February 16, 2022," *id.*, "treatment notes dated April 2021," Tr. 24, "treatment notes dated March 1, 2022," *id.*, "a diagnostic ultrasound of [Harvey]'s left shoulder performed on April 4, 2022," *id.*, "[t]horacic spine imaging performed in August 2021," *id.*, "his Function Report, dated June 13, 2022," *id.*, "[h]ospital records," *id.*, "[i]maging of [his] right foot performed on July 29, 2022" and "imaging of his left foot," *id.*, a "computed tomography (CT) scan of [his] neck . . . performed on June 29, 2022," Tr. 25, "[i]maging of his hips," *id.*, "radiographic imaging of his wrist," *id.*, "notes dated November 16, 2022," *id.*, "[u]pdated imaging of his lumbar spine performed on December 2, 2022," *id.*, "treatment notes dated January 2023," Tr. 26, and "a neurosurgical consult [from] September 2022," *id.*  The ALJ also analyzed Harvey's "medically determinable impairments," including, but not limited to, "[his] cervical spine issues" and "chronic low back and neck pain," in connection with the objective medical evidence.  Tr. 23.  And the ALJ did so "before determining [Harvey]'s [RFC]."  Tr. 22.

While noting that he could not "defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources," the ALJ also "fully considered" various pieces of "opinion evidence" before determining Harvey's RFC.  Tr. 26.  These included evaluations of Harvey's medical history "in September and October 2022" by "Linda Skolnick, Psy.D.," "Steven Akeson, Psy.D.," "Donald Charles Nelson, M.D.," and "Clifford Costley, M.D."  Tr. 27.  The ALJ also explained that "[t]he limitations detailed in the [RFC we]re sufficient to account for [Harvey]'s verifiable symptoms."

8

Tr. 28.  Thus, because the "ALJ's [RFC] determination[]" was "supported by good reasons and substantial evidence," the Court will not "reweigh the evidence presented to the ALJ." *Reece*, 834 F.3d at 908 (quoting *Johnson*, 788 F.3d at 872).  "Whether the ALJ should have provided additional limitations," the Eighth Circuit has explained, "amounts to a disagreement over the weighing of evidence within the record," which "is not this Court's role." *Austin v. Kijakazi*, 52 F.4th 723, 731 (8th Cir. 2022) (emphasis omitted) (quoting *Schmitt*, 27 F.4th at 1361).

In Harvey's brief, he principally points to "the standards contained in" two Eighth Circuit cases as support for his argument that the ALJ's "decision fail[ed] to be supported by substantial medical evidence."  Doc. 10 at 5 (first citing *Singh v. Apfel*, 222 F.3d 448 (8th Cir. 2000); and then citing *Lauer v. Apfel*, 245 F.3d 700 (8th Cir. 2001)).  He cites both cases for the same proposition: "[RFC] is a medical determination." *Id.* at 6 (citing *Singh*, 222 F.3d at 451); *see also id.* ("A Plaintiff's [RFC] is a medical question." (citing *Lauer*, 245 F.3d at 704)).  And the Eighth Circuit has recently reenforced Harvey's general proposition.  *See, e.g.*, *Schmitt*, 27 F.4th at 1360 ("[A] claimant's RFC is a medical question . . . ." (quoting *Hensley*, 829 F.3d at 932)).  But, the Eighth Circuit has also expounded upon that general proposition by explaining that "there is no *requirement* that an RFC finding be supported by a specific medical opinion." *Id.* (emphasis added) (quoting *Hensley*, 829 F.3d at 932).  And so although determining Harvey's "RFC is a medical question," the ALJ's "RFC finding" need not "be supported by a specific medical opinion." *Id.* (citation and internal quotations omitted); *see also, e.g.*, 20 C.F.R. § 404.1520c(a).

Moreover, the comprehensiveness of the ALJ's decision here, as analyzed above, far outperforms those in *Singh* and *Lauer*.  In *Singh*, the Eighth Circuit determined that "[t]here [wa]s *no* evidence in the record to support the ALJ's [RFC] finding other than the non-treating physicians' assessments," which the court concluded could not "be considered substantial evidence in the face of

9

the conflicting assessment of a treating physician." *Singh*, 222 F.3d at 452 (emphasis added). Similarly in *Lauer*, the Eighth Circuit "located *no* medical evidence to support the ALJ's conclusion that Mr. Lauer's mental impairments, the existence of which the ALJ acknowledged, limited only the degree to which he could interact with the public," and thus concluded that "the absence of an opinion d[id] not constitute substantial evidence supporting the ALJ's findings." *Lauer*, 245 F.3d at 704–05 (emphasis added). Therefore, neither *Singh* nor *Lauer* rescues Harvey's argument.

He also raises multiple, isolated arguments related to the RFC and supporting evidence. First, Harvey focuses on his Function Report and argues that "the [ALJ's] decision relie[d] quite a bit on the" report. Doc. 10 at 15. Harvey contends, however, that "[t]he decision selectively read[] the report, and d[id] not address statements made in the report that [we]re consistent with a finding [that he wa]s incapable of sustaining work activity." *Id.* at 15–16. But importantly, the Court "do[es] not reweigh . . . evidence presented to the ALJ"—i.e., the Function Report—and instead "defer[s] to the ALJ's determinations . . . supported by good reasons and substantial evidence." *Reece*, 834 F.3d at 908 (quoting *Johnson*, 788 F.3d at 872). Likewise, "the ALJ is not required to 'explicitly . . . reconcile every conflicting shred' of medical evidence," *Austin*, 52 F.4th at 729 (alteration in original) (citation omitted), and the Court "will not reverse merely 'because substantial evidence also exists in the record that would have supported a contrary outcome,'" *Stoner*, 818 F.3d at 369 (quoting *Andrews*, 791 F.3d at 928). Therefore, because the Court determines that the ALJ's decision "is supported by substantial evidence on the record as a whole," it need "not reverse merely because substantial evidence [may] also exist[] in the" Function Report. *Stoner*, 818 F.3d at 369 (quoting *Andrews*, 791 F.3d at 928).

Second, Harvey cursorily mentions that "[t]he ALJ's decision states [that he] is limited to low stress, but does not include such a limitation in the RFC." Doc. 10 at 21 (citing Tr. 26). But that is

10

not what the ALJ said in his decision.  Instead, the ALJ explained that "[t]here [wa]s nothing convincing in the record to suggest that [Harvey wa]s unable to perform a restricted range of light-duty work activity in a low stress working environment with limited social contact."  Tr. 26.  And because "RFC is defined as the *most* a claimant can still do *despite* his or her physical or mental limitations," *Martise*, 641 F.3d at 923 (emphases added) (citation omitted), nothing mandated that the ALJ include Harvey's vague reference to a "low stress working environment," Tr. 26, in the RFC, *see, e.g.*, 20 C.F.R. § 404.1545(a)(1) ("Your [RFC] is the most you can still do despite your limitations.").

And third, Harvey claims that, during the hearing, he "had his medical . . . file from the" United States Department of Veterans Affairs "available, and offered it" to the ALJ.  Doc. 10 at 18 (citing Tr. 54–55).  He further asserts that "[t]he ALJ *specifically indicated* he did not need that medical evidence."  *Id.* (emphasis added) (citing Tr. 55).  But the hearing transcript belies Harvey's recitation of the events.  During the hearing, the ALJ—not Harvey—first raised whether Harvey "ha[d] possession" of "the file with all" his VA medical documents.  Tr. 54.  Harvey indicated that he had the documents "on paper, currently packed," *id.*, but he never offered them to the ALJ, *see* Tr. 54–55.  Harvey also claims that the ALJ "specifically indicated" that the ALJ "did not need that medical evidence."  Doc. 10 at 18 (citing Tr. 55); *see* Tr. 54–55.  Not so.

In fact, at the conclusion of the hearing, the ALJ provided Harvey with an additional 30 days to submit his various VA medical documents and discharge document.  Tr. 72.  And, upon review, the record indicates numerous documents and records from the VA.  *See* Tr. 275–78 (Exhibit 13E); Tr. 328–756 (Exhibit 3F); Tr. 797–1408 (Exhibit 5F); Tr. 1409–1550 (Exhibit 6F); Tr. 1572–1712 (Exhibit 9F); Tr. 1725–1864 (Exhibit 11F).  What is more, the ALJ reviewed each of the documents in his decision as part of his RFC determination.  *See* Tr. 24 (analyzing Exhibits 3F and 5F); Tr. 25

11

(analyzing Exhibits 5F, 6F, 9F, and 11F); Tr. 26 (referencing Exhibit 13E). Therefore, although the ALJ did not need to provide "any analysis about how [he] considered . . . evidence in [his] decision" from "other governmental agencies," 20 C.F.R. § 404.1520b(c); *see also* 20 C.F.R. § 404.1504, the ALJ properly considered "all the relevant evidence in [Harvey's] record," 20 C.F.R. § 404.1545(a)(1); *see also, e.g.*, *Schmitt*, 27 F.4th at 1360–61.

### B.     Subjective complaints

As for Harvey's subjective complaints of pain, the Court determines that the ALJ, "in reaching [his] conclusion as to whether [Harvey was] disabled," fully and properly "consider[ed his] statements about the intensity, persistence, and limiting effects of [his] symptoms," and "evaluate[d his] statements in relation to the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4). Moreover, the ALJ "consider[ed] whether there [were] any inconsistencies in the evidence and . . . any conflicts between [Harvey's] statements and the rest of the evidence." *Id.*; *see, e.g.*, *Bryant v. Colvin*, 861 F.3d 779, 783 (8th Cir. 2017) (affirming Commissioner's denial of benefits, in part, because "the ALJ considered inconsistencies between [the claimant]'s complaints, personal history, and the medical record")

For instance, when analyzing Harvey's "cervical spine . . . imaging performed on May 23, 2022," the ALJ explained that "the[] objective findings corroborate[d Harvey]'s allegations of chronic low back and neck pain." Tr. 23. But, the ALJ went on, "they [we]re not indicative of debilitating pain levels." *Id.* Instead, "[t]he notes indicate[d] that despite testing confirming lower extremity neuropathy, [Harvey] was continuing to drive and engage in yard work, grocery shopping and trail walking in November 2021." *Id.* The ALJ also analyzed "[t]reatment notes dated November 2021 which "indicate[d] that while [Harvey] was reporting a 'plethora' of symptoms, no clear etiology was found for his reported symptoms after an 'exhaustive' evaluation." *Id.* Thus,

12

Harvey's "diffuse symptoms were not consistent with the objective imaging findings and no unifying diagnosis could be found." *Id.* Moreover, the ALJ noted that "[t]he records show th[at Harvey] continually declin[ed] to take pain medication, yet often us[ed] the emergency room (ER) to treat his back pain." *Id.*

In another instance, the ALJ reviewed "ER records dated February 16, 2022," where Harvey "show[ed] a 'very histrionic pain response' upon examination," Tr. 23, and "had reported an exacerbation of his back pain while 'shoveling,'" Tr. 24. However, the ALJ noted, that "level of activity is not what would be expected from a person with a debilitating neck or back pain condition," and "the notes state[d] that [Harvey] reported being told he was not a surgical candidate." Tr. 24. The ALJ also reviewed Harvey's "Function Report, dated June 13, 2022." *Id.* In that report, Harvey "stated that he was living in a house alone, however, he was supervising his three children half the time" and "was also caring for a dog." *Id.* "Though he stated it was painful and he lacked motivation," the ALJ noted that "[Harvey] cited no significant difficulty tending to his own personal grooming independently," and that "[h]e was preparing meals and performing chores, such as mowing the lawn 'in stages.'" *Id.* The ALJ also considered that, "[w]hile [Harvey] stated that he had 'no choice,' he reported the ability to drive and go out alone to shop for his needs in stores" and "stated that he could walk for a 'couple minutes' without requiring a rest break." *Id.* And so the ALJ determined that Harvey's "self-reported level of independent function [wa]s inconsistent with a finding of disability." *Id.*

In a final instance, the ALJ reviewed "a neurosurgical consult [from] September 2022," where Harvey indicated that "he was spending most of his time standing since sitting was too painful." Tr. 26. The ALJ concluded that "[t]his support[ed] a finding that [Harvey wa]s capable of a restricted range of light-duty work activity, with the additional limitations detailed in the [RFC] finding." *Id.*

13

Moreover, "[t]he [ALJ] added use of handrail while climbing ramps and stairs and frequent reaching and handling" to the RFC "to account for any foot drop or upper extremity neuropathy" that Harvey "may experience in the workplace." *Id.*  In sum, the ALJ explained that "[t]here [wa]s nothing convincing in the record to suggest that [Harvey wa]s unable to perform a restricted range of light-duty work activity in a low stress working environment with limited social contact." *Id.*  Thus, the ALJ properly considered Harvey's "statements about the intensity, persistence, and limiting effects of [his] symptoms," and "evaluate[d his] statements in relation to the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4).  Likewise, the ALJ determined, and explained in his decision, that some of Harvey's subjective complaints were inconsistent with the evidence to the extent that his pain was disabling.  Tr. 23–28; *see Bryant*, 861 F.3d at 783.  Therefore, the "ALJ's decision is supported by substantial evidence." *Bryant*, 861 F.3d at 784.

In passing, Harvey references two sources as support for his argument that "the [ALJ's] decision failed to properly consider [his] subjective complaints."  Doc. 10 at 5 (first citing Social Security Ruling 16-3p Titles II and XVI:  Evaluation of Symptoms in Disability Claims, 82 Fed. Reg. 49,462 (Oct. 25, 2017); and then citing *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984)).  However, in light of the ALJ's decision, both sources further buttress the decision.

Pursuant to Social Security Ruling 16-3p, an ALJ must "consider all of the [claimants]'s symptoms"—defined "as the [claimant]'s own description or statement of his or her physical or mental impairment[s],"—"including pain." Social Security Ruling 16-3p, 82 Fed. Reg. at 49,463. An ALJ must also consider "the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the [claimant]'s record." *Id.*  But as explained above, the ALJ considered Harvey's subjective complaints and analyzed their consistency with "the objective medical and other evidence in [Harvey]'s record." *Id.*  Likewise, Harvey fails to

14

clearly identify a subjective complaint that the ALJ did not consider in determining the RFC. *See* doc. 10.

Similarly, the Eighth Circuit explained in *Polaski* that "[t]he [ALJ] must give full consideration to all of the evidence presented relating to subjective complaints" and provided five factors to consider. *Polaski*, 739 F.2d at 1322. But "[w]hile ALJs must acknowledge and consider these so-called *Polaski* factors," the Eighth Circuit "ha[s] held that ALJs need not explicitly discuss each *Polaski* factor." *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010) (citation and internal quotations omitted). At any rate, "the *Polaski* factors include (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions." *Bryant*, 861 F.3d at 782 (citing *Polaski*, 739 F.2d at 1322).

Here, the ALJ's decision hit each of these factors. First, the ALJ considered Harvey's daily activities, including "yard work, grocery shopping[,] and trail walking," Tr. 23, and his "personal grooming" and "mowing the lawn," Tr. 24. Second, the ALJ analyzed Harvey's "mild degenerative[-]disc disease" and noted that he "ha[d] very limited passive range of motion in his left arm" which had "no significant progression since February 2020." *Id.* Third, with respect to Harvey's "back pain" reported in a 2022 visit to the ER, the ALJ explained that "shoveling" aggravated Harvey's back. *Id.*

Fourth, the ALJ noted that Harvey "continually declin[ed] to take pain medication," Tr. 23, and "admitted that he did not want pain medications," Tr. 24. And fifth, the ALJ concluded that Harvey had several functional restrictions, including "frequent reaching and handling," *id.*, and the "use of [a] handrail while climbing ramps and stairs . . . in the workplace," Tr. 26. Therefore, the ALJ's decision ran afoul of neither Social Security Ruling 16-3p nor the *Polaski* factors.

15

### C. The vocational witness's testimony

"As a result of these errors," Harvey contends, the ALJ "proffered a flawed hypothetical question to a vocational witness." Doc. 10 at 5. So too, Harvey argues, "the hypothetical question d[id] not capture the concrete consequences of [his] impairment." *Id.* at 23. But Harvey's argument indicates a misunderstanding of the requisite threshold for whether an ALJ's hypothetical question, and thus the vocational expert's response, constitutes substantial evidence. Under Eighth Circuit precedent, it is axiomatic that the "ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole." *Martise*, 641 F.3d at 927 (quoting *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006)); *see also, e.g.*, *Gragg v. Astrue*, 615 F.3d 932, 941 (8th Cir. 2010). Thus, so long as "[t]he ALJ's hypothetical question included all of [the claimant's] limitations found to exist by the ALJ and set forth in the ALJ's" RFC, a court must "hold that 'the hypothetical question was therefore proper, and [that] the [vocational expert]'s answer constituted substantial evidence . . . .'" *Martise*, 641 F.3d at 927 (quoting *Lacroix*, 465 F.3d at 889).

The ALJ's hypothetical question here "included all of" Harvey's "limitations found to exist by the ALJ and set forth in the ALJ's" RFC for Harvey. *Id.*; *compare* Tr. 67–68 (ALJ's hypothetical question to the vocational expert), *with* Tr. 22 (Harvey's RFC). Thus, the hypothetical question "capture[d] the 'concrete consequences' of [Harvey's] impairments" as determined by the ALJ. *Lacroix*, 465 F.3d at 889 (quoting *Roe v. Chater*, 92 F.3d 672, 676–77 (8th Cir. 1996)). This alone establishes that the "hypothetical question was therefore proper," and that the vocational expert's "answer constituted substantial evidence supporting the Commissioner's denial of benefits." *Martise*, 641 F.3d at 927 (quoting *Lacroix*, 465 F.3d at 889).

16

Yet for additional support, Harvey stresses that the ALJ's hypothetical question should have included, among other things, that "he ha[d] a left foot drop" which "render[ed] him incapable of being balanced [or] able to walk on a sustained basis." Doc. 10 at 23. But as explained in the ALJ's decision, he "added [to Harvey's RFC the] use of [a] handrail while climbing ramps and stairs and frequent reaching and handling *to account for any foot drop* or upper extremity neuropathy [that Harvey] may experience in the workplace." Tr. 26 (emphasis added). And the ALJ included these same limitations in the hypothetical question to the vocational expert: "So if you assume a person of [Harvey]'s age, education and work experience, who is limited to light work, never climb ladders, ropes or scaffolds, never balance . . . or crawl, occasionally climb ramps and stairs with a rail, stoop, kneel, and crouch, . . . avoid all exposure to unprotected heights . . . . Would such a person be able to perform any of [Harvey]'s past work?" Tr. 67–68. Therefore, because the ALJ's hypothetical question "included all of [Harvey's] limitations found to exist by the ALJ and set forth in the ALJ's" RFC, the Court concludes that the "hypothetical question was therefore proper," and that the vocational expert's "answer constituted substantial evidence." *Martise*, 641 F.3d at 927 (quoting *Lacroix*, 465 F.3d at 889).

\* \* \*

As a brief aside, the Court finds it necessary to make a few observations as to the length of Harvey's brief in support of his complaint and the veracity of select portions of the brief. Doc. 10. As for length, the Court's Local Rules require that briefs filed in social security appeals "shall not exceed fifteen (15) standard typed pages, exclusive of a signature page and attachments, except by leave of Court for good cause shown," E.D.Mo. L.R. 9.02—a fact the Court reminded Harvey of in a previous show-cause order, *see* doc. 11. After Harvey's counsel requested leave of Court to file the

17

overlength brief, doc. 12, which the Court granted, doc. 13, Harvey's brief—exclusive of the portions noted in Local Rule 9.02—totals twenty-four pages, doc. 10.

But after carefully reviewing the brief, it appears to the Court that a not-insignificant portion of the brief appears to include lengthy, word-for-word excerpts of regulations, cases, the ALJ's decision, or other evidence in the record.  For example, in one segment spanning from the middle of page nine to the top of page thirteen, Harvey appears to recite—nearly verbatim and with little citation—a long portion of Social Security Ruling 16-3p.  *See* doc. 10 at 9–13.  Likewise, between pages thirteen and seventeen, Harvey nearly exclusively quotes portions of the ALJ's decision or legal standards from various cases, with minimal argument interspersed in between.  *See id.* at 13–17 (citations omitted).  Now let it be clear:  the Court sincerely appreciates—and demands—comprehensive briefing from litigants and their counsel.  But a line exists.

As for veracity, the Court highlighted at least one instance where Harvey's brief unambiguously mischaracterized a portion of the hearing transcript.  *See supra* Section V.A.  Additional assertions pose related concerns, but the Court need not wade into or emphasize every issue.  In sum, factually and legally accurate briefing is to the administration of justice as jet fuel is to the operation of airplanes:  indispensable.  And so the Court reminds all litigants and counsel who may review this Memorandum and Order to scrutinize their briefing before submitting it to any court.

## VI.     Conclusion

For the reasons explained above, the Court affirms the Commissioner's decision and

18

dismisses with prejudice Harvey's [1] Complaint. A separate Judgment accompanies this Memorandum and Order.

So ordered this 24th day of March 2025.

*SL R. CR*

STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE